**Opinion filed October 17, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00142-CV

_____

## IN THE INTEREST OF M.P., K.G., AND J.P., CHILDREN

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM 53,626**

## MEMORANDUM OPINION

This is an appeal from an order terminating the parental rights of the mother and the fathers of M.P., K.G., and J.P. The father of M.P. and J.P. filed a notice of appeal, as did the mother of all three children. We affirm.

### I. *Issues*

In two issues on appeal, M.P. and J.P.'s father challenges the legal and factual sufficiency of the evidence to support the trial court's findings. The mother presents one issue challenging the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the children's best interest.

## II. *Sufficiency Standards of Review*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds

for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

### III. *Analysis*

In this case, the trial court found that the mother had committed three of the acts listed in Section 161.001(1)—those found in subsections (D), (E), and (Q)—and that the father had committed two of the acts—those found in subsections (E) and (Q). Specifically, the trial court found that both parents had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children and that both parents had knowingly engaged in criminal conduct that resulted in their conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of filing the petition. Additionally, the trial court found that the mother had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being. The trial court also found, pursuant to Section 161.001(2), that termination of each parent's parental rights would be in the best interest of the children.

### A. *Evidence Introduced at Trial*

The mother and father were incarcerated in federal prison at the time of removal and also at the time of the final hearing in this case. The parents participated in the hearing by telephone. At the time of the hearing, M.P. was seven years old; K.G. was six years old; and J.P. was four years old.

The Department received an intake in December 2011 after then three-year-old J.P. had been beaten by a woman with whom the mother left the children prior to the mother's incarceration. J.P. had linear bruises and abrasions on his body, his back, his legs, his buttocks, and his shoulders; the bruises were consistent with physical abuse, not with normal discipline. J.P. had been beaten with a belt while

3

he was wet and naked. K.G. witnessed the physical abuse. Prior to the 2011 intake, the Department had received information in 2009 that the children were filthy, that the mother had allowed the children to be around people who were using drugs, and that the mother had left the children in the backseat of a vehicle for at least two hours while she was in a club. The Department was unable to locate the mother or the children at the time of those allegations.

The record also shows that the children had been moved around to different homes. At the time of the final hearing, the Department had exhausted all resources regarding relatives, and the children were placed at High Sky Children's Ranch. The Department's conservatorship supervisor testified that termination and adoption is in the children's best interest because they are young and need to have permanency. The Department's caseworker likewise testified that termination and adoption would be in the children's best interest because the children need permanency now. The evidence at trial showed that the mother is due to be released in 2016 and will not be in a position to care for her children until at least 2016. The father's projected release date is in 2017.

M.P. misses her mother and needs a motherly figure in her life, but she wants a permanent home. K.G. would also benefit from stability and a permanent home. The children appeared to be incredibly bonded to each other, so the Department located a potential adoptive family interested in adopting a sibling group of three. The potential adoptive family had not yet met the children at the time of the final hearing, but the family had been provided with the counseling notes of K.G., who has some behavioral issues; information concerning the reasons for the Department's involvement with the children; and a court report. Having been provided with this information, the potential adoptive family was interested in adopting all of the children. Testimony showed that the potential adoptive family would be able to meet the needs of all three children.

4

Among the judgments of conviction that were admitted into evidence were the following two: (1) a March 5, 2009 judgment from a federal district court showing that the father was convicted of possession with intent to distribute more than five grams of crack cocaine and use of a minor to conceal, for which the father was sentenced to serve a 120-month term of imprisonment, and (2) a June 8, 2011 judgment from a federal district court showing that the mother was convicted of conspiracy to distribute and possess with intent to distribute fifty grams or more of crack cocaine base, for which the mother was sentenced to serve a 70-month term of imprisonment. The mother testified about the positive things she had done for herself while imprisoned, like participating in the residential drug treatment program, taking parenting classes, and getting her GED. She also testified that, after she is released from prison, she would be able to provide for her children and would do everything it takes to give her children a home and the mother that they deserve. The father also testified about his accomplishments and his "evolution" in prison, including taking drug classes that have helped him with his crack cocaine addiction and working on his GED.

### B. Acts of the Parents

The mother acknowledges that the trial court's findings under Section 161.001(1) were supported by the evidence at trial. The father challenges the findings under Section 161.001(1). He argues that there was no evidence that he was ever near the children and that, because he did not "become[] a 'father' and thus a 'parent'" until the trial court signed an interlocutory decree of paternity on May 24, 2012, the trial court "could not consider any evidence of malfeasance prior to that day." He also argues that the Department failed "to controvert his assertion that he would be released before 2018" and failed to prove that he was unable to care for the children. We disagree.

5

The Department produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the father had knowingly engaged in criminal conduct, that he was duly convicted and imprisoned for that conduct, and that his imprisonment and inability to care for the children would continue for more than two years after the date that the petition was filed. The Department of Family and Protective Services filed the original petition in this case on December 16, 2011. On January 31, 2012, the Department filed an amended petition in which it added an allegation under Section 161.001(1)(Q) as a ground for termination of the father's parental rights due to his conviction and confinement. The evidence at trial showed the father's projected release date to be in 2017, but the father testified that he thinks he will be released in 2015.

Regardless of which filing date is used or which release date is used, more than two years would elapse from the date the petition was filed to the date of the father's release. Thus, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(Q). *See In re H.R.M.*, 209 S.W.3d 105, 108–10 (Tex. 2006). Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the father's challenge in his first issue to the sufficiency of the evidence with respect to the trial court's finding under Section 161.001(1)(E). *See* TEX. R. APP. P. 47.1.

*C. Best Interest*

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of both the father's and the mother's parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical

danger to the children now and in the future, the parental abilities of the parents, the extended incarceration of the parents, the criminal conduct of the parents, the parental abilities of the potential adoptive family, the programs available to assist that family, the plans for the children by the Department, the instability of the homes in which the parents requested the children to be placed, the stability of the children's current placement, and the parents' involvement with drug use and drug distribution, we hold that the evidence is both legally and factually sufficient to support the findings that termination of the father's and the mother's parental rights is in the best interest of the children. *See id.* We cannot hold that the findings as to best interest are not supported by clear and convincing evidence. The father's second issue is overruled, and the mother's sole issue is overruled.

## IV. *This Court's Ruling*

We affirm the trial court's order of termination.


TERRY McCALL

JUSTICE


October 17, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

7